IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DEAN BRADSHAW and CHRISTI BRADSHAW,<br><br>        Plaintiffs, | ORDER DENYING DEFENDANT'S MOTION TO MODIFY AWARD OF THE ARBITRATION PANEL DATED JULY 12, 2005 AND GRANTING PLAINTIFFS' MOTION TO CONFIRM THE ARBITRATION PANEL'S AWARDS |
| vs. | |
| LYNN HARKER, PAT HARKER, WINSTON V. BEARD, and BEARD ST. CLAIR GAFFNEY McNAMARA CALDER PA,<br><br>        Defendants. | Case No. 2:03-CV-00714 PGC |

After requesting arbitration of Dean and Christi Bradshaw's claims, defendants Lynn and

Pat Harker now move the court to modify the arbitration panel's award dated July 12, 2005,

contending that the arbitrators decided issues that were beyond the scope of the arbitration (#36).

In response, the Bradshaws move the court to confirm the arbitration panel's awards dated July

12, 2005, September 1, 2005, and November 22, 2005 (#52), arguing that the issues were fully

and fairly decided.  After considering the submissions from both sides and hearing oral argument

on February 28, 2006, the court believes that the blue-ribbon panel that arbitrated this case decided the issues properly.  Accordingly, the court DENIES the Harkers' motion to modify the arbitration panel's award (#36), GRANTS the Bradshaws' motion to confirm the arbitration panel's awards (#52), DENIES AS MOOT the Bradshaws' motion to modify or vacate the arbitration award (#53), GRANTS both the Harkers' and Bradshaws' requests for oral argument (#43, #50), and GRANTS both parties' motions for leave to file overlength memorandums (#48, #55, #61, and #64).

## FINDINGS OF FACT

For purposes of resolving the pending motions, the court finds the following facts:  Both the Bradshaws and the Harkers entered into a contractual agreement to start a furniture company, Woodland L.L.C.  Dean and Christi Bradshaw controlled fifty percent of Woodland, and Lynn and Pat Harker controlled the other fifty percent of Woodland according to their operating agreement.  In other words, Woodland was to be a closely-held L.L.C. in which just four parties would have control.  All four parties signed Woodland's operating agreement which dictated, *inter alia*, the operating mechanisms of Woodland, dispute resolution, and formation of a committee to determine compensation and royalties, all to be governed under Idaho law.

On January 17, 2001, the parties signed an Amended Operating Agreement at the request of Lynn Harker.  This Amended Operating Agreement gave the "members, other than Lynn Harker, . . . no management rights," and gave the members no right to vote except in accordance with the "Actions reserved to members."[1]  It also gave Lynn Harker full discretion to decide

---

[1]Amended Operating Agreement, at 4.

compensation levels of officers, employees, and consultants, including his own and his wife's.[2] According to the Bradshaws, they later learned that this agreement curtailed their rights as fifty percent owners in the company, giving Lynn Harker too much discretion and not effectively protecting their interests.

In August 2003, the Bradshaws filed a complaint with the court.  The Bradshaws demanded a jury trial on twelve claims of relief regarding the management of Woodland.  The Bradshaws claimed that the Amended Operating Agreement unfairly limited their authority and rights in Woodland.  The Bradshaws claimed, among other things, securities fraud, common law fraud, negligent misrepresentation, conversion, breach of fiduciary duty, unilateral mistake, breach of implied covenant, and conspiracy.  Specifically, the Bradshaws alleged breach of fiduciary duty by the Harkers, conversion by the Harkers, common law fraud against all the defendants, securities fraud against all the defendants, and breach of the covenant of good faith and fair dealing against the Harkers.[3]  Based on these claims, they sought to rescind the Amended Operating Agreement and/or requested actual damages and punitive damages based on the fair value of their interests before the Amended Operating Agreement took effect.  They also requested attorneys' fees and costs in bringing and prosecuting their action under Idaho Code §§ 30-1446(1) and 30-1403.[4]

In response, the Harkers sought to dismiss the complaint based on improper venue, to

---

[2]*Id*.

[3]*See* Complaint, Docket No. 1 (Aug. 15, 2003).

[4]*Id*. at 67, ¶ C.

change venue either under 28 U.S.C. § 1406(a) or § 1404(a), or to compel arbitration.[5]  The court

denied the Harkers' motion to dismiss based on venue or to change venue, but granted the

motion to compel arbitration and stayed the case pending arbitration.[6]  The parties subsequently

arbitrated their claims from February 2-11, 2005.

After hearing arguments and receiving the parties' briefs, a blue-ribbon arbitration panel

found in favor of the Harkers on several of the Bradshaws' claims, including the Bradshaws'

request to rescind the Amended Operating Agreement.  At the same time, however, the panel

found in favor of the Bradshaws on their claim that the Harkers were self-dealing, among other

claims.  The panel acted through four separate awards: (1) Arbitration Award dated March 10,

2005 (*Bradshaw I*); (2) Final Arbitration Award dated July 12, 2005 (*Bradshaw II*); (3)

Arbitration Award for Attorneys' Fees and Costs dated September 1, 2005 (*Bradshaw III*); and

(4) Further Arbitration Award for Attorneys' Fees and Costs dated November 22, 2005

(*Bradshaw IV*).  In summary, while declining to rescind the Amended Operating Agreement, the

panel ruled that the Harkers had breached certain duties.  The panel ordering the Harkers to repay

Woodland over $176,000 for payments and self-dealing claims, to reimburse the Bradshaws for

more than over $14,000 for attorneys' fees paid by Woodland to defend the Harkers on the self-

dealing claims, and (through Lynn Harker) to cause Woodland to pay out a total distribution of

[5]*See* Motion by Pat Harker, Lynn Harker to Dismiss Complaint, or to Change Venue, or to Compel Arbitration, Docket No. 8 (October 15, 2003).

[6]*See* Order, Docket No. 24 (Feb. 4, 2004).

$400,000 to the Woodland members for 2004.[7]  Finally, the arbitration panel ordered Lynn Harker to cause Woodland to distribute the reasonable attorneys' fees incurred by the Bradshaws and Harkers.

Of particular relevance here, upon receipt of the final arbitration award, *Bradshaw II*, the Harkers moved the court to modify the award (#36).  In their motion, the Harkers requested the court to modify the Final Arbitration Award by eliminating paragraphs 2 and 7.  Paragraph 2 required Lynn Harker as Manager to cause Woodland to make member distributions to each set of members, both the Bradshaws and the Harkers.  The panel's Final Arbitration Award ordered Lynn Woodland to "cause Woodland to distribute to the members a total of $400,000 as a member distribution for the year 2004."[8]

Paragraph 7 ordered Lynn Harker to cause Woodland to pay attorneys' fees to the Bradshaws for their actions enforcing and illuminating the contract agreement.  *Bradshaw IV* subsequently ordered "Lynn Harker, as the manager of Woodland, [to] cause Woodland to pay for the reasonable attorneys fees and costs incurred by both the Bradshaws and the Harkers to resolve the issues of the viability, applicability and enforceability of the Amended Operating Agreement."[9]  The panel found that the "core issues in the case all turned on the enforceability and proper interpretation of the terms of the" Agreement, and "that the fees and costs expended

---

[7]*See Bradshaw I*, Arbitration Award, 77Y 181 00074 04 LOPE (March 10, 2005); *Bradshaw II*, Final Arbitration Award, 77Y 181 00074 04 LOPE at 18-19 (July 2005).

[8]*Bradshaw II*, at 19-20.

[9]*Bradshaw IV*, Further Arbitration Award for Attorneys Fees and Costs, 77Y 181 00074 04 DEAR, at 2 (Nov. 22, 2005).

in connection with the recision claims related directly to the enforceability and application of the" Agreement.[10]  The panel based its award on the "Resolution of Woodland specifically authorizing the payment of attorneys fees," (known as the Actions of Manager) and found "that the fees requested [fell] within the conditions adopted in that Resolution and within the testimony and statements of the parties and their counsel as to how the Resolution was intended to be applied."[11]  The panel rejected the Harkers' objection to the allocation of the fees and costs and awarded attorneys' fees of $339,120.29, and expert fees of $42,960.90.[12]

In this action, the Harkers argue that, under 9 U.S.C. § 11(b), the arbitration panel exceeded its authority by requiring Woodland, a non-party to the arbitration, to make member distributions and to pay the Bradshaws' attorneys' fees.  They further argue that Paragraph 2 should be stricken because the issue of distributions was never properly submitted to the panel, and should not have been considered by the panel.  And they complain that the panel's member distributions order runs against Woodland, a non-party to the dispute.  With respect to attorneys' fees, the Harkers argue that Paragraph 7 should be stricken because the panel's award of attorneys' fees is beyond the panel's authority, is contrary to law, and runs against Woodland, a non-party to the dispute.  The Bradshaws counter that both the member distributions issue and the attorneys' fees issue were properly before the panel, and that the panel had the authority to determine these issues.

---

[10] *Id*.

[11] *Id*.

[12] *Id*. at 2-7.

The Bradshaws also submitted a motion to confirm the arbitration panel's awards (#52), arguing that the panel had not exceeded its authority both when it made the decision on the member distributions or by requiring Lynn Harker to cause Woodland to reimburse the Bradshaws' attorneys' fees and costs.  The Bradshaws discussed the four awards issued by the arbitration panel, and specifically noted the panel's authority and reasoning for the member distributions award and the reimbursement of attorneys' fees and costs to the Bradshaws.  In the alternative, the Bradshaws also filed a motion to modify or vacate the arbitration award of attorneys' fees and costs to the Harkers in the event the court did not confirm all of the awards of the arbitrators (#53).  The Bradshaws then withdrew their motion to modify or vacate the arbitration award of attorneys' fees and costs to the Harkers (#66).

## DISCUSSION

The court's authority in reviewing an arbitration award is quite limited.  The court "may make an order modifying or correcting the award upon the application of any party to the arbitration" only where:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.[13]

"In addition, the Supreme Court has recognized a public policy exception that permits a court to

---

[13]9 U.S.C. § 10 (1990); *see also Sheldon v. Vermonty*, 269 F.3d 1202, 1206 (10th Cir. 2001).

decline to enforce an arbitrator's award" in limited circumstances.[14]

"[G]reat deference is owed to the arbitrator's decision.  Indeed, the standard of review of arbitral awards is among the narrow known to the law.  An arbitral award is subject to reversal only if it evinces a manifest disregard of the law."[15]  And an "arbitrator's erroneous interpretations or applications of law are not reversible."[16]  The court must "look solely to statutory and other legal requirements imposed upon arbitration contracts, proceedings and awards.  Errors in the arbitrator's interpretation of law or findings of fact do not merit reversal under this standard."[17]  The court may not, therefore, independently judge an arbitration award.[18]  "[B]y agreeing to arbitrate, a party trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."[19]  The Harkers thus bear the burden of sustaining an attack on the legality of an arbitration award.[20]

---

[14]*Seymour v. Blue Cross/Blue Shield*, 988 F.2d 1020, 1022-23 (10th Cir. 1993) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 42 (1987)); *see also Denver & Rio Grande Western R.R. Co. v. Union Pacific R.R. Co.*, 119 F.3d 847, 849 (10th Cir. 1997).

[15]*U.S. Energy Corp. v. Nukem, Inc.*, 400 F.3d 822, 830 (10th Cir. 2005) (internal quotations and citations omitted); *see also Sheldon*, 269 F.3d at 1206 (quoting *Brown v. Coleman Co.*, 220 F.3d 1180, 1182 (10th Cir. 2000)); *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 931 (10th Cir. 2001); *Litvak Packing Co. v. United Food & Comm. Workers*, 886 F.2d 275, 276 (10th Cir. 1989); *Jenkins v. Prudential-Bache Sec., Inc.*, 847 F.2d 631, 634 (10th Cir. 1988).

[16]*ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (quotations omitted).

[17]*Bowles Fin. Group v. Stifel, Nicolaus & Co.*, 22 F.3d 1010, 1012 (10th Cir. 1994).

[18]*Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1147 (10th Cir. 1982).

[19]*Brown*, 220 F.3d at 1182 (internal quotations omitted).

[20]*Ormsbee Dev. Co.*, 668 F.2d at 1147.

The Harkers argue, however, that their motion to amend or modify does not come under the "highly deferential" standard laid out in the federal case law.  Quoting *Domke on Commercial Arbitration*, they maintain that:

> While the general rule is that courts show great deference to an arbitrator's decision, there are some limits.  Judicial deference ends and vacatur or modification of the award is appropriate if the arbitrator exceeds the limitations of his or her contractual mandate.  When the parties have not clearly and unmistakably agreed to submit to arbitration the arbitrability of a particular dispute, a court will not give deference to an arbitrator's decision on the matter but, rather, it will decide the matter independently.[21]

The Harkers believe that this court's standard of review is much less deferential because they seek merely to modify the award, rather than vacate it, because (in their view) certain issues were not submitted to the panel.

It is true that the deference owed to arbitration awards "is not the equivalent of a grant of limitless power,"[22] and "courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of the arbitrators."[23]  Yet *Domke* itself states that issues will be deemed arbitrable unless "it is clear that the arbitration clause has not included" them.[24]  A helpful analogy comes from collective bargaining arbitration, where federal courts have been careful to not stray far from a highly deferential standard.  The Eighth Circuit has stated that it is well-established that "an arbitrator's award must be upheld as long as it 'draws its essence' from

---

[21] I DOMKE ON COMMERCIAL ARBITRATION § 38.7

[22] *Leed Architectural Prods, Inc. v. United Steelworkers of Am.*, 916 F.2d 63, 65 (2d Cir. 1990).

[23] *Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir. 1996).

[24] I DOMKE ON COMMERCIAL ARBITRATION § 12.02 (cited in *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945(1995)).

the collective bargaining agreement."[25]  Indeed, that circuit noted that "the Supreme Court has

held that an arbitrator does not exceed the scope of the issue presented to him as long as the

arbitrator 'stays within the areas marked out for his consideration.'"[26]  To be sure, where "an

arbitrator goes beyond his contractual authority to decide issues not properly before him, his

award fails to draw its essence from the agreement and must be vacated, despite the usual great

deference given to arbitrator's awards."[27]  But the general principle appears to be that "the

arbitrators interpretation of the scope of the issue must be upheld as long as it is rationally

derived from the parties' submission."[28]

        The Harkers rely on the Supreme Court's decision in *First Options of Chicago, Inc. v.

Kaplan*,[29] for their argument that this court should not give great deference to the arbitration

panel's decision relating to distributions and attorneys' fees.  *First Options* dealt with whether

the issue of "arbitrability of claims" should be decided by the arbitrator or a judge.  The Kaplans

had objected to any arbitration, rather than challenging specific issues before an otherwise-proper

---

[25]*Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, AFL-CIO*, 706 F.2d 228, 231 (8th Cir. 1983) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596-97 (1960)).

[26]*Id.* (quoting *United Steelworkers of Am.*, 363 U.S. at 598).

[27]*Centralaw, Inc., Fort Dodge, Iowa v. Local No. 816, Int'l Union of Electrical, Radio and Machine Workers of Am.*, 827 F.2d 1210, 1217 (8th Cir. 1987); *Int'l Union of Petroleum & Indus. Workers v. Western Indus. Maintenance, Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).

[28]*American Postal Workers Union, AFL-CIO v. Runyun*, 185 F.3d 832, 835-38 (7th Cir. 1999); *see also Richmond Fredericksburg & Potomac R.R. Co. v. Transportation Communications Int'l Union*, 973 F.2d 276, 280 (4th Cir. 1992).

[29]514 U.S. 938, 943 (1995).

arbitration.  The Court distinguished between these objections: "[T]he law treats silence or ambiguity about the question '*who* (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the questions '*whether* a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement' – for in respect to this latter question the law reverses the presumption."[30]  Indeed, any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."[31]  Later on, in *Green Tree Financial Corp. v. Bazzle*, the Court stated that when "parties agreed to submit to the arbitrator '*all* disputes, claims, or controversies arising from or relating to this contract or the relationships which result from this contract,' . . . the parties seem to have agreed that an arbitrator, not a judge, would answer the relevant question" of the scope of arbitration.[32]  Indeed, that Court again quoted *Mitsubishi Motors Corporation v. Soler Chrysler-Plmouth*, noting that "if there is doubt about that matter – about 'the scope of arbitrable issues' – we should resolve that doubt 'in favor of arbitration.'"[33]

In the case before the court, the parties are not in disagreement about whether arbitration was proper.   Indeed, it is noteworthy that the Harkers actually sought relief from the court to compel arbitration in the first place.  Having obtained that arbitration, the Harkers now contend that the particular issues of distributions and attorneys' fees were not properly before the

---

[30]*Id*. at 944-45 (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

[31]*Mitsubishi Motors*, 473 U.S. at 626 (internal quotations omitted).

[32]539 U.S. 444, 451-52 (2003) (emphasis in original).

[33]*Id*. at 452 (quoting *Mitsubishi Motors.*, 473 U.S. at 626 ).

arbitration panel.  The court will view both the issue of distributions and attorneys' fees in turn, by first viewing whether the panel properly arbitrated the claims under a *de novo* standard.  Once the court determines that the arbitration properly occurred, the court views the *scope* of the arbitration panel's ruling with great deference, under the Harkers' own cited *First Options* standard.[34]

*A. The Harkers' Motion to Modify/Amend the Arbitration Award* (#36)

1. Distributions

The Harkers first argue that under Section 11(b) of the Federal Arbitration Act, the court is permitted to vacate the award if it finds that the arbitrators have exceeded their powers or imperfectly executed them.[35]  They argue that because the distributions issue was not submitted to the panel, then the panel's award exceeded its authority and should be modified.

The arbitration panel's authority to conduct the arbitration and make its ruling came from Paragraph 15 of the Amended Operating Agreement of Woodland.  The arbitration provision in that paragraph stated:

> *Any controversy* (including both actions in contract or tort) arising out of or relating to this Operating Agreement, (including its formation, performance, modification or extension) for any amount of relief . . . shall be mediated by the dispute resolution committee. . . . [I]f the matter is unable to be resolved through mediation, the matter shall be resolved exclusively by arbitration . . . [and the] arbitrator shall have the authority to resolve all matters, including disputes and affirmative decisions to the same extent allowed for mediation.[36]

---

[34]514 U.S. at 945.

[35]*See* 9 U.S.C. § 11(b).

[36]Amended Operating Agreement, ¶ 15, Ex. 5 of Bradshaws' Memo. in Support of Mot. to Confirm Arbitration Award, Docket No. 56 (Dec. 6, 2005) (emphasis added).

Neither party argues that the arbitration provision in the Amended Operating Agreement was improperly relied upon, nor do they argue that the Bradshaws' claims should not have undergone arbitration.  Thus, the issue of whether the arbitration panel themselves should determine arbitration of any of the Bradshaws' claims is not before the court, and the *de novo* standard sought by the Harkers is not applicable.[37]   Accordingly, the court next views the scope of arbitration under the high deference standard, with the "scope of arbitrable issues . . . resolved in favor of arbitration."[38]

The literal reading of this mediation/arbitration clause in the Amended Operating Agreement allows for a broad scope to the arbitration panel's authority.  Indeed, "any controversy . . . arising out of or relating to the" Amended Operating Agreement is fair game for the panel once a matter is not resolved through mediation.  All four members of Woodland signed this Agreement.  A plain reading of the Agreement clearly illuminates the broad authority of the arbitration panel, especially as the Agreement discusses the power to mediate, and subsequently arbitrate, "levels of compensation, determine the adequacy of performance, determine distributions to members . . . and [make] decisions about avoiding a deadlock."[39]  Clearly, compensation levels and distributions are within the Amended Operating Agreement's scope of authority for the arbitration panel.

The Harkers swiftly move past the broad language of the Agreement, trying to focus the

---

[37]*See First Options*, 514 U.S. at 945; I DOMKE ON COMMERCIAL ARBITRATION § 12.02.

[38]*First Options*, 541 U.S. at 945; *Mitsubishi Motors*, 473 U.S. at 626; *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

[39]Amended Operating Agreement, at ¶ 15.

court's attention on the Bradshaws' complaint.  This complaint, maintain the Harkers, did not explicitly raise member distributions.  As a result, the Harkers argue, the distribution issue was not clearly before the panel, even though the panel would have had authority to examine the issue if it was brought before them.

A quick review of the Bradshaws' complaint, however, refutes the Harkers' argument that the member distributions issue was not before the panel.  The Bradshaws' complaint did discuss the distributions issue, specifically challenging the Manager's recently acquired discretion to withhold distributions.[40]  And the Amended Fifth and Seventh Claim of the complaint pleaded breaches of fiduciary duty and breaches of the Agreement, as well as expressly pleading Lynn Harker's failure to make distributions.[41]  As the arbitration panel noted, "[u]nder notice pleading requirements, a party is not required to plead the theory of the case with precision as long as the opposing party is on fair notice of the claim against him."[42]  The Bradshaw's claims plainly raised the issue of what sort of distributions should be made – in other words, it gave the Harkers fair notice that the Bradshaws would be asking the panel to provide relief in the form of distribution of Woodland's assets.  The court therefore finds that the arbitration panel did not exceed its authority or improperly rule on the member distributions.

---

[40]*See* Complaint, at 24-26, 30.

[41]Complaint, at 51 ("Lynn Harker's breaches of such covenant of good faith and fair dealing include . . . [his] refusal to distribute funds to pay taxes on income generated by the Company [and his] refusal to distribute funds generated by the Company proportionately to the members' ownership in the Company.").

[42]*Bradshaw II*, at 3 (citing *Shah v. Inter-Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282 (7th Cir. 2002) and *Vendelin v. Costco Wholesale Corp.*, 95 P.3d 34 (Idaho 2004)).

The Harkers next argue that Woodland was a "non-party" to the litigation and therefore that the arbitration panel did not have the authority to bind it.  Thus, even if the panel's ruling was proper, the Harkers claim that the panel exceeded its authority yet again by requiring Woodland to make member distributions.

Before turning to the merits of this claim, it is useful to point out that the Harkers are essentially trying to relitigate their claims after submitting their dispute to the arbitration panel. By the end of *Bradshaw I* (if not much earlier), the parties clearly understood that Woodland would be affected by this suit and by the arbitration.  Obviously all parties going into the arbitration understood that what was at stake was how to distribute certain portions of Woodland's assets if the Bradshaws won on their claims.  And it is also clear that Woodland itself could possibly have ceased to exist if the panel deemed the Amended Operating Agreement null and void and awarded Woodland's assets to the Bradshaws.  In light of all that, it would be surprising, to say the least, to discover that the arbitrators were not able to render some sort of effective judgment on the distribution issue if the Bradshaws' claims had merit.

Turning to the merits, the Harkers' claim founders on the point that the panel did not order Woodland to do anything.  Instead, the panel's award requires Lynn Harker to "cause Woodland to distribute to the members a total of $400,000 as a member distribution for the year 2004."[43]  There is no claim here that Lynn Harker lacks authority to cause this to happen.  Indeed, it appears that Lynn Harker's current authority over Woodland is close to absolute under the Amended Operating Agreement.  Moreover, the Bradshaws and the Harkers own Woodland

---

[43]*Bradshaw II*, at 19.

completely.  Woodland does not have any other shareholders or owners.  In other words, the

entire ownership of the company was involved in this arbitration.  It would truly elevate form

over substance to now require some sort of new arbitration or litigation to resolve the questions

that the arbitration panel carefully resolved.

As a separate and independent grounds for affirming the arbitration award, the court finds

that the Harkers have waived any right to raise the question of whether Woodland should have

been made a party to the arbitration.  The Harkers originally moved to dismiss the complaint

based on improper venue, to transfer venue, or to compel arbitration.  The court denied the

motion to dismiss for improper venue or transfer venue, but granted the Harker's motion to

compel arbitration.  At that time, the Harkers could have asked for Woodland to have been

included in the lawsuit or the arbitration.  They choose not to do so, perhaps because the

inclusion of Woodland would have destroyed this court's diversity jurisdiction.

Even if Woodland's role was somehow unclear at the outset of the arbitration, there was

little doubt that it was implicated when the arbitration panel announced *Bradshaw I*.  At that

time, the Harkers could have – once again – sought joinder of Woodland if it had decided to do

so.  But rather than include Woodland and allow it to appear as its own party to assert any of its

"own" claims, the Harkers deemed it the proper litigation strategy to keep Woodland out until

after the panel issued *Bradshaw II, Bradshaw III*, and *Bradshaw IV*.  And even today, the

Harkers still do not seek permissive joinder or inclusion of Woodland as an necessary party.  In

light of what was (and is) an apparently deliberate choice by the Harkers not to have Woodland

included in the arbitration, the Harkers cannot hide behind the claim that Woodland's

participation was required.  Any other conclusion would essentially allow the Harkers to

"sandbag" the Bradshaws by participating in the arbitration process and then, after losing on

some important issues, having the award modified on an artificial argument that Woodland

should have been technically named in the pleadings.

The Harkers cite two cases for the proposition that "the entity itself must be present for a

judgment to be entered against it, even if all of its members are personally before the court."[44]  In

*Weber v. King,*[45] the U.S. District Court for the Eastern District of New York relied on New York

Limited Liability Company Law to find that an L.L.C. is a separate legal entity and must be

represented in a proceeding that might alter its interests.  And in *Trademark Retail, Inc. v. Apple

Glen Investors, LP*,[46] the U.S. District Court for the Northern District of Indiana held that under

Indiana corporate law, much like New York Limited Liability Company Law, the L.L.C. at issue

was an indispensible party.  The courts in these two cases, however, considered different

procedural issues than the pending one.  Both courts faced motions to dismiss filed by the

defendants, and both courts deemed the L.L.C. an indispensible party.  Diversity jurisdiction was

immediately destroyed in each case once the court ruled the respective L.L.C.s would have to be

joined in the respective lawsuits.[47]  In this case, however, the Harkers moved to dismiss based on

---

[44]Harkers' Memo. in Opp., at 8.

[45]110 F. Supp. 2d 124, 126 (E.D.N.Y. 2000).

[46]196 F.R.D. 535, 539-40 (N.D. Ind. 2000).

[47]*See Weber*, 110 F. Supp. 2d at 128-9 ('The Company, therefore, is a citizen of both Virginia and New York, and joinder of the Company would defeat diversity."); *Trademark Retail, Inc.*, 196 F.R.D. at 541-42 ("Since the citizenship of an LLC for purposes of diversity jurisdiction is the citizenship of its members, and since the LLC is composed of Indiana

improper venue, but never moved to dismiss the complaint based on Woodland being an indispensible party.  As a result, these cases are not instructive.

Moreover, even if Woodland had appeared as a separate "party," it would not have said anything different than the Harkers.  Counsel for the Harkers commendably and candidly essentially conceded this point at oral argument.  It is also obvious to the court that Lynn Harker now effectively controls Woodland.  Woodland was not required to be a "party" to the arbitration for the court to affirm the arbitration award.

In sum, the matter of how to distribute Woodland's assets was fully and fairly presented to the arbitration panel.  There is no basis for the court to overturn the panel's decision.

2. Attorneys' Fees and Costs

The Harkers allege that the arbitration panel's award of attorneys' fees and costs to the Bradshaws exceeded the panel's authority.  They further allege that an award of attorneys' fees and costs contravenes Idaho law, because Idaho law does not allow for an award of such fees and costs.  In the abstract, some of their arguments about attorneys' fees seem plausible.  On closer examination of the peculiar context of this case, however, the court finds that the issue of attorneys' fees were necessarily before the panel.  Indeed, it would be impossible for the court to attempt to separate the interwoven rulings of all four *Bradshaw* decisions.  To do so would destroy the financial fairness that the panel sought to achieve.

It is first important to understand that the panel upheld Lynn Harker's Actions of

_____

members, diversity jurisdiction is destroyed requiring that this action be dismissed.") (internal citations and quotations omitted).

Manager in executing a resolution providing that Woodland pay for *his* attorneys' fees.  Lynn

Harker passed this resolution on December 24, 2004, only two months before the arbitration

began and a year and a half after the litigation began.  This resolution provided:

> Woodland Furniture shall reimburse Lynn Harker for the reasonable attorneys' fees and
> costs associated with the Bradshaw litigation that have been either incurred or paid by
> him or which in the future will be incurred or paid by him.  It is determined that the
> reasonable attorneys' fees and costs incurred by Lynn Harker as a result of the Bradshaw
> litigation have been for the benefit of the Company and are part of the ordinary and
> necessary expenses of the Company. . . .

The Bradshaws then added a claim to the arbitration, challenging these Actions of

Manager as an unequal distribution – essentially that Lynn Harker's fees were indemnified by the

company while the Bradshaws' were not.  It is also true that the Actions of Manager also

provides that Woodland shall reimburse the Bradshaws for attorneys' fees and costs incurred on

any derivative claim, as long as the amount awarded it paid to Woodland.  Of course, awarding

amounts back to Woodland would essentially be returning the award, at least in part, to the

Harkers.

In face of these distributions to Harker and in light of the need to be fair to the

Bradshaws, the panel awarded a distribution to the Bradshaws in the form of attorneys' fees.  The

Harkers now claim that Harker's Actions of Manager were not properly before the panel, and

therefore the panel did not have authority to award attorneys' fees to the Bradshaws in response.

In the view of the court, such a result would be patently unjust, as it would give attorneys' fees to

Lynn Harker but no fees to the Bradshaws in the very same proceeding.  If the fees incurred by

Lynn Harker have been for the "benefit of the Company," then it is clear to the court, and

apparently clear to the panel, that *all* of the litigation was for the "benefit of the Company."  The

well-worn saying about treating the goose and gander equally seems plainly applicable here. Essentially, the panel considered attorneys' fees as nothing more than an equalizing distribution in the wake of Harker's Actions of Manager benefitting himself.  As a result, in these unique circumstances, the court finds that the panel's decision awarding attorneys' fees based on the Actions of Manager did not exceed the panel's scope of authority.

The Harkers also claim that the panel's award contravenes Idaho state law.  Idaho Code § 7-910 provides that "[u]nless otherwise provided in the agreement to arbitrate, the arbitrators' expenses and fees, together with other expenses, not including counsel fees, incurred in the conduct of the arbitration, shall be paid as provided in the award."  The Harkers cite to several Idaho state court opinions for the proposition that Idaho state substantive law precludes awards of attorneys' fees by arbitration panels.[48]  Indeed, both *Moore v. Omnicare, Inc.* and *Emery v. United Pacific, Inc.*, held under Idaho law that an "award of attorney fees exceeded the arbitration panel's grant of authority."[49]

The panel, however, based it decision not on some generic understanding of its power to award attorneys' fee but rather on an particular understanding of what was an appropriate equalizing distribution of Woodland's assets in this case – a central subject of the arbitration. Lynn Harker clearly provided for attorneys' fees for himself and his wife out of Woodland's assets, and the panel simply concluded that, as a matter of equal distribution of assets, the same

_____

[48]*See, e.g.*, *Moore v. Omnicare, Inc.*, 118 P.3d 141, 148-49 (Idaho 2005); *Emery v. United Pac. Inc.*, 815 P.2d 442, 444 (Idaho 1991).

[49]*Moore*, 118 P.3d at 148.

treatment was appropriate for the Bradshaws.  Both *Moore* and *Emery* involved the obviously

distinguishable situation where panels awarded fees based on the mere fact that a party had

prevailed in the arbitration.  In sum, the court finds that the arbitration panel did not exceed its

authority when it ordered Lynn Harker to cause Woodland to distribute to the Bradshaws' sums

equal to reasonable attorneys' fees, as part of a distribution of assets.

    *B. The Bradshaw's Motion to Confirm the Award (#52)*

    Given the above rulings, the court also confirms the panel's arbitration awards,

specifically *Bradshaw I*, *Bradshaw II*, *Bradshaw III*, and *Bradshaw IV*.   Although not required

to affirm the award, the court is convinced the blue-ribbon arbitration panel fairly and judiciously

considered all of the evidence presented.   Accordingly, the court GRANTS the Bradshaws'

motion to confirm the arbitration panel's awards (#52).  Because the court grants the Bradshaws'

motion to confirm the arbitration panel's awards, the court DENIES AS MOOT the Bradshaws'

motion to vacate the arbitration award of attorneys' fees and costs to the Harkers (#53).

## CONCLUSION

    The court DENIES the Harkers' motion to modify the arbitration panel's awards (#36),

GRANTS the Bradshaws' motion to confirm the arbitration panel's awards (#52), DENIES AS

MOOT the Bradshaws' motion to modify or vacate the arbitration award of attorneys' fees and

costs to the Harkers (#53), GRANTS both the Harkers' and Bradshaws' requests for oral

argument (#43, #50), and GRANTS both parties' motions for leave to file overlength memoranda

(#48, #55, #61, and #64).

    The court has been advised that there may be some outstanding issues to be resolved

involving the Beard defendants, who apparently remain a party to this litigation.  On the current

state of the briefing, it is not clear to the court that any issues remain to be resolved.

Accordingly, the court orders the parties to show cause within fifteen days of this order why this

case should not be dismissed.  In addition, if the parties can show cause why this case should not

be dismissed, the court requests the parties to confer and propose to the court a schedule for

deciding any remaining claims in an expeditious manner.

SO ORDERED.

DATED this 1st day of March, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge