IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DEAN BRADSHAW and CHRISTI BRADSHAW<br><br>    Plaintiffs,<br><br>vs.<br><br>LYNN HARKER, PAT HARKER, WINSTON V. BEARD, and BEARD ST. CLAIR GAFFNEY McNAMARA CALDER PA.<br><br>    Defendants. | ORDER ON ALL PENDING MOTIONS<br><br><br><br><br>Case No. 2:03-CV-00714 PGC |

After the court issued its order denying the Harker's motion to amend/correct the arbitration panel's award, the court also requested the parties to show cause on what the court thought was the narrow issue of why the case should not be dismissed in its entirety. What resulted instead was a flurry of motions and responses from the Bradshaws, the Beard defendants, and even the Harkers as well. Currently before the court from the Bradshaws are several motions, including a motion for an order to show cause against Lynn Harker as to why he has not complied with the court's order (#84), a motion for leave to file a supplemental complaint against the Beard defendants (#89), and a motion for attorneys' fees for their motions to confirm the arbitration award (#102). From the Harkers, the court has a motion to stay pending appeal and for relief from posting supersedeas bond (#105), and a motion for relief from

posting supersedeas bond (#108). And from the Beard defendants, the court has a response to its order to show cause, arguing that the case against it should be dismissed (#80). There are also motions for oral argument on the court's order to show cause (#91, #102, #120). The court will address each of these motions in turn.

## BACKGROUND

The long and complicated background of this case is well-known to the parties. Familiarity with the court's previous rulings is assumed in this order. In brief, the Bradshaws filed their complaint alleging numerous causes of action against the Harkers and the Beard defendants surrounding an operating agreement and managerial actions for Woodland Furniture. The Harkers moved for arbitration under their arbitration agreement, which the court granted. The court then stayed any action against the Beard defendants pending this arbitration.

A blue-ribbon arbitration panel issued four awards dated from March 10, 2005, to November 22, 2005. The Harkers filed a motion to modify the panel's award on October 11, 2005. After extensive briefing by both parties and a hearing, the court affirmed the panel's awards on March 1, 2006. At that point, the court issued an order to show cause as to the state of the case regarding the other defendants – e.g., the Beard defendants.

The Bradshaws, the Harkers, and the Beard defendants have all filed motions regarding the court's confirming of the arbitration awards. The Bradshaws seek a order to show cause against the Harkers for not complying with the terms of the panel's awards or the court's affirming order (#84). They also seek leave to file a supplemental complaint against the Beard defendants (#89) and attorneys' fees for their defense of the panel's awards before this court (#102). The Harkers seek a stay pending appeal (#105) and relief from posting a supersedas bond during the appeal (#108). And both the Beard defendants and the Bradshaws have

responded to the court's order to show cause regarding the state of this case.

## DISCUSSION

Initially, the court DENIES the Bradshaws' motion for a hearing on its order to show cause (#91) and the other motions for hearings (#102, #120). The court is familiar with the issues in front of it, and does not find that further oral argument would be useful.

*A. Collateral Estoppel Principles Affect All of the Claims Against the Beard Defendants*.

In the court's order to show cause, the court requested the parties to explain why the remainder of the case should not be dismissed after confirming the arbitration awards. The Bradshaws responded that if the arbitration awards had a collateral estoppel impact, certain claims for relief would be barred. Specifically, they conceded that the First, Eleventh, and Twelfth claims for relief would be barred if collateral estoppel principles applied. The Bradshaws then argued, however, that their Second, Third, and Tenth claims for relief would not be barred by the arbitration awards.

The Bradshaws provide no discussion on whether collateral estoppel applies, but the Tenth Circuit, in *B-S Steel of Kansas v. Texas Industries*,[1] and *Coffey v. Dean Witter Reynolds Inc.*,[2] has remarked that collateral estoppel principles do apply to a confirmed arbitration award in some situations:

> Such a doctrine precludes a court from reconsidering an issue previously decided in a prior action where "(1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party, to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and

---

[1] 439 F.3d 653, 661-65 (10th Cir. 2006).

[2] 961 F.2d 922, 927-28 (10th Cir. 1992).

fair opportunity to litigate the issue in the prior action."[3]

The panel decided a number of issues presented in this action before the court. These prior actions were fully adjudicated by the Bradshaws on their merits and fully decided by the panel. The Bradshaws were a party to the prior adjudication in front of the arbitration panel, and the Bradshaws had a full and fair opportunity to litigate the issues in the prior action. "[T]he record and the decision of the arbitrator[s] demonstrate that [the Bradshaws] did have a full and fair opportunity to litigate the issue[s involved]."[4] Therefore, it is clear that the panel's awards collaterally estop the Bradshaws from raising a number of their claims against the Beard defendants. And the fact that the arbitration awards were a series of complex, interrelated decisions that carefully examined the facts relating to the Beard defendants weighs in favor of applying collateral estoppel principles to this litigation.

In terms of the actual issues still pending before the court against the Beard defendants, the court has identified six relevant claims: (1) securities fraud, (2) common law fraud, (3) negligent misrepresentation, (4) breach of fiduciary duty, (5) aiding and abetting a breach of fiduciary duty, and (6) conspiracy. The Bradshaws concede that the panel found that the Bradshaws' ownership interest in Woodland Furniture did not legally constitute a "security." Therefore, their First Cause of Action against the Beard defendants for securities fraud must fail because no security was actually involved. The Bradshaws also concede that the panel found factually that no illegal agreement existed between the Harkers and Winston Beard, so their Twelfth Cause of Action for conspiracy must also fail. Finally, the Bradshaws concede that the

---

[3] *B-S Steel of Kan.*, 439 F.3d at 662 (quoting *Estate of True v. C.I.R.*, 390 F.3d 1210, 1232 (10th Cir. 2004)).

[4] *Western Indus. & Env. Servs., Inc. v. Kaldveer Associates, Inc.*, 887 P.2d 1048, 1051-52 (Idaho 1994).

panel found from both a legal and a factual perspective that the Harkers did not breach any fiduciary duty to the Bradshaws. As a result, the Bradshaws' Eleventh Cause of Action against the Beard defendants for aiding and abetting breach of fiduciary duty can not be maintained against the Beard defendants.

That leaves the court with three remaining causes of action alleged against the Beard defendants: (1) common law fraud, (2) negligent misrepresentation, and (3) breach of fiduciary duty. It is clear that the panel found that the Bradshaws' failed to meet their burden to show a claim of common law fraud against the Harkers. Discussing the Beard defendants' actions, the panel also found the evidence insufficient to prove the Bradshaws' claim that they had been induced by fraud by either the Harkers or the Beard defendants to execute the Amended Operating Agreement.[5] Additionally, after a full examination of the relevant evidence, the panel found "no evidence of any fact that was misrepresented by [Mr. Beard] . . . to either of the Bradshaws in connection with the proposed" Amended Operating Agreement.[6] And the panel found that "the Bradshaws have not presented evidence of any material fact that was withheld from them . . . by . . . [Mr. Beard]."[7] Indeed, although the panel noted "the evidence supports legitimate concerns about [Mr.] Beard's candor when he was discussing the proposed changes with Christi [Bradshaw], there is no evidence of any fact that was misrepresented by [Mr. Beard] or by Lynn [Harker] to either of the Bradshaws in connection with the proposed amendments" to the Amended Operating Agreement.[8] Therefore, it is clear the panel factually found that the

---

[5] *See Bradshaw I*, at 3-7.

[6] *Id*.

[7] *Id*.

[8] *Id*.

Beard defendants did not engage in either common law fraud or negligent misrepresentation. Because collateral estoppel principles apply to the arbitration panel's findings, the Bradshaws' Second and Third Claims must be dismissed.

This leaves only one cause of action – the Bradshaws' Tenth Cause of Action for breach of fiduciary duty against the Beard defendants. The Bradshaws presented evidence to the panel that they believed Mr. Beard and his firm were acting as their attorney. The Bradshaws also offered the panel extensive information on their claims against the Harkers in conjunction with Mr. Beard's actions. After these submissions, the panel rejected certain arguments made by the Bradshaws on these issues. The panel in *Bradshaw I* found that the Bradshaws "discussed . . . whether the Bradshaws should obtain their own attorney to advise them. [They] further acknowledged that the Bradshaws had independent legal counsel who advised them on other legal matters."[9] And the panel in *Bradshaw II* similarly denied the Bradshaws' claims for damages for the reduced value of their membership interest in Woodland caused by loss of control. The panel stated that although the evidence presented a close question of whether the Harkers should have provided more complete disclosure of the reasons for proposed changes in the Amended Operating Agreement, "the Bradshaws could have obtained legal and other advi[c]e on the impact [of] the proposed changes, but failed to do so."[10]

It is clear that the panel found the Bradshaws were aware of the potential need for outside legal counsel, and also that they had access to independent legal counsel at the time. The panel found that the Bradshaws could have obtained legal and other independent advice, but failed to do so. In the wake of these findings, a breach of fiduciary duty claim could not succeed,

---

[9]*Id*.

[10]*Bradshaw II*, at 1-2.

especially given the Bradshaws' admissions that they discussed whether to get independent counsel and that they acknowledged they had independent counsel on other matters.  Given these findings by the arbitration panel, which the court finds to have a collateral estoppel affect on the litigation in this case, the Bradshaws' breach of fiduciary duty claim against the Beard defendants also fails.  Due to the arbitration panel's findings and the interrelated decisions by the panel, the court finds that the Bradshaws' Tenth Cause of Action against the Beard defendants must be dismissed due to the collateral estoppel effect of the arbitration awards.

Perhaps recognizing that their current claims were not the strongest, the Bradshaws also seek leave to file a supplemental complaint against the Beard defendants.  The Bradshaws seek to add a new cause of action, to clarify the facts that give rise to their existing causes of action, and to request the remedy of disgorgement (which they have just now withdrawn).  In fact, the complaint would apparently adds two new causes of action – breach of fiduciary duty by the Beard defendants for representation of Woodland and intentional interference with current economic relations.  Since the court has dismissed the existing causes of action, supplementation to "clarify the facts" on these causes of action is not helpful.  The court will, however, examine the newly alleged causes of action.

Generally "[l]eave to supplement a complaint should be liberally granted unless good reason exists for denying leave, such as prejudice to the defendants."[11]  In order to supplement a complaint under Fed. R. Civ. P. 15(d), supplementation is allowed within the court's discretion "upon reasonable notice and upon such terms as are just" to set forth "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."[12]

---

[11] *Gillihan v. Shillinger*, 872 F.2d 935, 941 (10th Cir. 1989).

[12] Fed. R. Civ. P. 15(d).

The Beard defendants argue that the Bradshaws' supplemental complaint contains numerous assertions of claims against them on behalf of Woodland. Indeed, the supplemental complaint does assert numerous allegations regarding the Beard defendants' fiduciary duties to Woodland.[13] The Bradshaws' Third Claim for Relief alleges breach of fiduciary duty by the Beard defendants, stating that the Beard defendants owed these duties to the Harkers, Woodland, and to the Bradshaws simultaneously.[14] The complaint continues by stating that throughout "the Beard Defendants' representation of the Harkers and Woodland, the interest of the Harkers regularly were adverse to the interests of Woodland and its members as a whole."[15] Although the Bradshaws seek damages for themselves in this claim for relief, their Third Cause of Action seeks those damages specifically because of the attorney-client relationship between the Beard Defendants and Woodland.[16] Thus, the Third Claim for Relief may only proceed if the Bradshaws do not have an attorney client relationship with the Beard defendants, in which case they would rely on their allegations that the Beard defendants had simultaneous conflicts that included Woodland. This creates a fatal problem: (1) either this claim includes Woodland as a derivative party, in which case Woodland would have to be joined as a derivative party and destroy diversity jurisdiction, or (2) Woodland would not be joined, in which case the Beard defendants can only claim breach of fiduciary duty on behalf of themselves, which claim this court has already dismissed. Given that either way the claim would be dismissed, either due to

---

[13] *See* Supplemental Complaint, Docket No. 89, at ¶¶ 9, 12, 14, 37, 40, and 41.

[14] *Id*. at ¶ 110.

[15] *Id*. at ¶ 112.

[16] *Id*. at ¶ 109. ("As an alternative to the Third Claim of Relief, if the jury does not find an attorney client relationship existed between the Beard Defendants and the Bradshaws, the Bradshaws allege the following . . .").

collateral estoppel principles or because of lack of diversity jurisdiction, the court finds that supplementation to provide for the Third Claim for Relief is not appropriate.

In the Supplemental Fourth Claim for Relief – Intentional Interference with Current Economic Relations – the Bradshaws also seek to raise claims on Woodland's behalf.  The Bradshaws allege the Beard defendants have intentionally interfered with the current economic relationships between the Bradshaws and the Harkers by advising Lynn Harker, as Woodland's counsel, to engage in certain violations.  Each of the violations listed appears to be detrimental to Woodland, such as "[a]dvising Lynn Harker it is acceptable for Woodland to overpay salaries,"[17] "[a]dvising Lynn Harker it is acceptable to loan Woodland funds to third parties,"[18] "[a]dvising Lynn Harker to take positions in relation to the litigation between the Bradshaws and the Harkers contrary to the Amended Organizational Documents of Woodland *and the best interests of Woodland*,"[19] and "[p]reparing documents for Lynn Harker to use, as the manager of Woodland, *which are not in Woodland's best interests* or the best interests of the members of Woodland as a whole."[20]

Although the Bradshaws claim that their supplemental complaint does not raise claims on behalf of Woodland, in effect the claim for relief clearly does so.  The Bradshaws essentially seek damages yet again for their loss of control, as they attempt to request damages for the documents and work undertaken by the Beard defendants due to alleged intentional interference with economic relations.  *Bradshaw II*, which this court has confirmed and has collateral estoppel

---

[17] *Id*. at ¶ 123(a).

[18] *Id*. at ¶123(a)(ii).

[19] *Id*. at ¶ 123(a)(v) (emphasis added).

[20] *Id*. at ¶ 123(b) (emphasis added).

effect here, stated that "[i]n light of the evidence and the conclusion reached in *Bradshaw I*, the Panel denies the Bradshaws' claim for damages in the reduced value of their membership interest in Woodland Furniture . . . caused by the loss of control. . . . The Bradshaws could have obtained legal and other advi[c]e on the impact on the proposed changes, but failed to do so."[21] The Bradshaws Fourth Claim for Relief seeks to rehash earlier arguments already addressed by the panel and the court. If the Bradshaws seek to bring the claim on behalf of Woodland, they will need to join Woodland and destroy diversity jurisdiction. But if the Bradshaws seek to bring the claim only on their behalf, the panel has already made certain factual and legal findings that the court believes precludes these claims. Given that supplementation would be futile, the court DENIES the Bradshaws' motion to file a supplemental complaint against the Beard defendants (#89).

> *B. The Harkers' Stay Request is Granted, but the Supersedeas Bond Requirement is Not Waived, and the Bradshaws' Motion for an Order to Show Cause is Granted only as it Relates to the Non-monetary Portions of the Arbitration Awards.*

The Harkers move for a stay pending appeal under Fed. R. Civ. P. 62, and note that "[w]hile granting a stay is mandatory when a bond is posted, a bond is not necessarily required in all instances." The Harkers request that the court not require a bond in this case because there is "no party" available to post that bond. Under Rule 62(d), "the appellant by giving a supersedeas bond may obtain a stay" when an appeal is taken. And the "district court may only stay execution of the judgment pending the disposition of certain posttrial motions or appeal if the court provides for the security of the judgment creditor."[22] Indeed, "the purpose of a supersedeas bond is to secure an appellee from loss resulting from the stay of execution and . . . a full

---

[21] *Bradshaw II*, at 1-2.

[22] *Peacock v. Thomas*, 516 U.S. 349, 360 n.8 (1996).

supersedeas bond should be the requirement in normal circumstances."[23]  Of course, "District courts . . . have inherent discretionary authority in setting supersedeas bonds."[24]  And in *Miami International Realty Co. v. Paynter*, the Tenth Circuit affirmed a district court's decision that required less than the full amount of a supersedeas bond to be posted by the defendant under Rule 62(b) for good cause shown.[25]

With respect to a non-monetary judgment, there are other concerns the court must address.  Under Rule 62(b)'s mandatory provisions, a defendant seeking a stay on appeal must demonstrate "whether the defendants are likely to prevail in the related proceeding; whether, absent a stay, the defendants will suffer irreparable harm; whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and the public interests at stake."[26]

Turning first to the non-monetary portions of the court's judgment, the Harkers have failed to present to the court any substantial arguments on any of the relevant issues, including their likelihood of success on their appeal, their irreparable harm, the substantial harm to the Bradshaws, and any relevant public interests.  Therefore, the non-monetary portions of the court's judgment are not stayed.

Turning to the monetary aspects of the judgment, the Harkers make the hypocritical argument that the requirement for a supersedeas bond in this case is inapposite, because the court's judgment affirms the arbitration award calling for Woodland, rather than Lynn Harker, to

---

[23]*Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986).

[24]*Id*.

[25]*Id*. at 874 (affidavit showing defendant's malpractice insurance of $500,000 could not cover a $2,100,000 judgment sufficient to grant stay with supersedeas bond for full amount).

[26]*USW v. Or. Steel Mills, Inc.*, 322 F.3d 1222, 1227 (10th Cir. 2003) (citing *Battle v. Anderson*, 564 F.2d 388, 397 (10th Cir. 1977).

act.  "In this unique circumstance," the Harkers claim, "there is no party to post a bond."[27]  But as the Harkers well know, the arbitration award required Lynn Harker, as Manager of Woodland, to cause Woodland to provide certain distributions to both parties and also to pay certain attorneys' fees for the Bradshaws.  Obviously, if the Harkers wish to pursue an appeal, they can either post the bond themselves or have this done by "their puppet" Woodland, in the colorful but accurate terminology of the Bradshaws.  Interestingly, despite extensive briefing on this issue, the Harkers do not assert inability to post a bond.

      A supersedeas bond is also required for other reasons.  Most important, it is apparent to the court that, for reasons that are not fully apparent, there is considerable personal animosity between the Harkers and Bradshaws.  Because of that animosity, some litigation decisions in this case are seemingly being made not because economic cost-benefit calculation would dictate them, but rather in an effort to "stick it" to the other side.  The latest blizzard of motions may be one example of this phenomenon.  Indeed, the Bradshaws assert, with perhaps only modest hyperbole, that Mr. Harker intends to spend more in attorneys' fees fighting the arbitration award than it would cost to comply with the dispute.

      Moreover, the Bradshaws have an arbitration award, now confirmed by this court, which entitles them to several hundreds of thousands of dollars.  The ability of Woodland to satisfy that award a year or two done the road is uncertain.  According to information proffered by the Bradshaws (and not contested by the Harkers), Woodland's financial condition is deteriorating and net profits last year (after generous compensation payments to Mr. Harker) were close to zero.  In an affidavit (again, not contested by the Harkers), the Bradshaws also provide proof that

---

[27] Harkers' Memo. in Sup. of Defs' Mot. for Stay Pending Appeal and for Relief from Posting Supersedeas Bond, at 2.

"if the trend in losses and depletion of Woodland's capital continues, by the end of this year, Mr. Harker will be unable to cause Woodland to comply with the Arbitration Awards."[28] The Bradshaws also assert that Mr. Harker is "looting" Woodland. The court need not agree with that characterization to recognize the obvious fact that Mr. Harker has largely unfettered control over the assets of Woodland and is possibly in a position to dissipate those assets should he choose to do so.

Finally, for the reasons just discussed, the Bradshaws' proposed alternative to a cash bond – a letter of credit – is not sufficient protection. The Harkers propose that the letter of credit come from Woodland. This would simply replicate the concerns about Woodland's financial health described above. For all these reasons, only a supersedeas bond will provide the Bradshaws with the protections to which they are entitled.

The Bradshaws also ask that Mr. Harker be required to post a "cash bond." It is not clear precisely what that term includes or whether the court is authorized to require such a bond under Rule 62(d). More important, it is not clear how a cash bond would provide significantly greater protection to the Bradshaws than a supersedeas bond. The court understands – and will direct in this case – that the supersedeas bond be provided by a third-party surety approved by the Clerk of Court, such as Liberty Mutual Insurance Company or Western Surety Company. (A complete listing of approved sureties is available on the court's website.) If such a bond is posted to protect the Bradshaws, then it is appropriate to stay the arbitration award pending appeal. Accordingly, the court GRANTS the Harkers' motion for a stay pending appeal (#105), but DENIES their motion for relief from the supersedeas bond requirement in Rule 62(d) (#108).

There remains to be determined the amount of the bond. The arbitration award is for

---

[28]Townsend Stay Affidavit, ¶ 12.

$821,087.04. The Harkers also seek an additional 25% "interest", which totals $192,771.75. The court finds that some interest is appropriate, since subsequent litigation on appeal will (if this court's experience with this case is any guide) be time consuming and the Bradshaws should be protected against erosion in the value of their award. However, a figure of 25% seems excessive. Therefore, the court will order 15% interest, an amount of $123,163.05. The total cash bond required is, therefore, $944,250.09. The court directs that Mr. Harker cause Woodland to post an appropriate supersedeas bond from a third-party surety approved by the Clerk of Court in that amount within 21 days of the date of this order. He will be relieved from this requirement if such a bond from such a third-party surety is posted directly by him or if cash in that amount is deposited into the registry of the court. Mr. Harker is also ordered not to dissipate the assets of Woodland during that 21 day period in a way that would prevent it from posting the required bond.

The court also GRANTS the non-monetary portions of the Bradshaws' motion for an order to show cause (#84) to the extent of requiring a certification of compliance with the awards. Even though the court grants the stay under Rule 62(d), such a stay may only apply to monetary judgments in the discretion of the court.[29] Therefore, within 21 days of the date of this order, the Harkers are directed comply with *all* of the non-monetary portions of the arbitration awards. These include, but are not limited to, providing the financial records of Woodland to the Bradshaws as provided for in the arbitration awards. Within 21 days, the Harkers will file with the court an appropriate certification showing compliance with the non-monetary portions of the arbitration awards. In light of these rulings protecting the Bradshaw's interests, the Bradshaws' further motion for an order to show cause is DENIED (#84). In light of these rulings, there is

---

[29]*N.L.R.B. v. Westphal*, 859 F.2d 818, 819 (9th Cir. 1988).

also no need for further depositions in this case.

*C. The Bradshaws' Motion For Award of Attorneys' Fees is Denied.*

The Bradshaws request this court award attorneys' fees because they expended significant attorneys' fees and costs "when forced to oppose the Harkers ill-conceived Motion to Modify and when subsequently forced to file a Motion to Confirm the Awards." They seek $44,799.26, together with the attorneys' fees and costs associated with this motion and any subsequent appeal. Citing Idaho law, the Bradshaws argue that both the statute and the Actions of Manager permit attorneys' fees to be awarded.

The arbitration, and the subsequent motions to confirm the arbitration award, proceeded under Idaho law. Idaho Code § 7-914 states that "[u]pon the granting of an order confirming, modifying or correcting an award, . . . [c]osts of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court." Although the Idaho Supreme Court in *Driver v. SI Corporation* noted that whether "the term 'disbursements' in . . . § 7-914 includes attorney fees is not clear on its face," it did note that a majority of state courts "construe[d] 'disbursements' to include attorney fees."[30] The *Driver* court then held that "[a]ttorney fees are awardable to the Drivers in the discretion of the district court for fees incurred in the district court proceeding."[31] The Idaho Supreme Court's use of the terms "in the discretion of the district court," and "disbursements may be awarded by the court" signifies the discretionary, rather than mandatory, aspect of attorneys' fees for motions confirming arbitration awards.

*Driver* did not explain the determinations that a court must make in awarding

---

[30] 80 P.3d 1024, 1030-31 (Idaho 2003).

[31] *Id*. at 1031.

discretionary attorneys' fees for post-arbitration motions. Presumably some sort of balancing of equities is appropriate. Given that there is little guidance on the standard for awarding such fees, the court looks to Idaho law that permits discretionary attorneys fees in civil cases, namely Idaho Code § 12-121. That statute provides that in "any civil action, the judge may award reasonable attorney's fees to the prevailing party."[32] The same "may award" discretionary language is present in this statute, and attorneys' fees are specifically listed, unlike Idaho Code § 7-914.

Under § 12-121, "which applies generally to any civil appeal," Idaho courts "will award attorney fees if [they] are left with an abiding belief that the appeal was brought frivolously, unreasonably or without foundation."[33] Thus, if the Harkers "presented neither a genuine legal issue nor a cogent challenge to the [court's] exercise of discretion," attorneys' fees would be appropriate under § 12-121.[34] And the Idaho Supreme Court stated the authority to award attorneys' fees quite succinctly in *Minich v. Gem State Developers*:

> Since the statutory power is discretionary, attorney fees will not be awarded as a matter of right. Nor will attorney fees be awarded where the losing party brought the appeal in good faith and where a genuine issue of law was presented. In normal circumstances, attorney fees will only be awarded when this court is left with the abiding belief that the appeal was brought, pursued or defended frivolously, unreasonably or without foundation.[35]

The Harkers' motion called for the court to decide several complex issues revolving around the four interconnected arbitration awards. Both sides vigorously argued their motions and provided excellent briefing on all relevant issues to the court. And the court can find no evidence that the Harkers brought their motions frivolously, unreasonably, or without

---

[32] Idaho Code § 12-121.

[33] *Simonovich v. Simonovich*, 713 P.2d 445, 447 (Idaho Ct. App. 1985).

[34] *Evans v. Park*, 732 P.2d 369, 371 (Idaho Ct. App. 1987).

[35] 591 P.2d 1078, 1085 (Idaho 1979).

foundation.[36] Therefore, the court finds that the Harkers' motion was not brought or pursued frivolously or unreasonably and in its discretion DENIES the Bradshaws' request for attorneys' fees (#102).

## CONCLUSION

The request for hearings on the order to show cause, the motion for attorneys' fees, and the motion for relief from posting supersedeas bond and to stay pending appeal are all DENIED (#91, #102, #120). The court dismisses the Bradshaws' First, Second, Third, Tenth, Eleventh and Twelfth causes of action against the Beard defendants. The Bradshaws' motion for leave to file a supplemental complaint against the Beard defendants is DENIED (#89). The motion for relief from supersedeas bond is DENIED (#108) and Mr. Harker shall cause Woodland to post a supersedeas bond from an approved third-party surety in the amount of $944,250.09 within 21 days of the date of this order. Mr. Harker will be relieved from this requirement if an appropriate supersedeas bond from an approved third-party surety is posted by him directly or if cash in that amount is deposited into the registry of the court. Mr. Harker is also ordered not to dissipate the assets of Woodland during that 21 day period in a way that would prevent posting of a bond. In light of these requirements, the Harkers' motion for a stay pending appeal is GRANTED (#105). The Bradshaw's motion for an order to show cause against Lynn Harker (#84) is GRANTED in part, to the extent of requiring a certification from Mr. Harker as to compliance with the non-monetary aspects of the arbitration award within 21 days of the date of this ruling, and DENIED with respect to other requests (#84). The Bradshaws' motion for attorneys' fees is DENIED (#102). As no further issues remain pending before the court, the Clerk's Office is directed to

---

[36]*Sacred Heart Med. Cent. v. Nex Perce County*, 35 P.3d 265, 268 (2001) (analyzing Idaho Code § 12-121 which provides attorneys' fees to the prevailing party under the court's discretion for any civil action).

close this case.

SO ORDERED.

DATED this 8th day of May, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge